IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| VICENTE ALVARADO, YVETTE ALVARADO, STEVE FLORES, PRISCILLA FLORES, and THOMAS GUTIERREZ, <br><br>      Plaintiffs, <br><br> vs. <br><br> CITY OF ALBUQUERQUE, OFFICER CARLA GANDARA, OFFICER ED SAUER and OFFICER LANCE FAILS, <br><br>      Defendants. | No. 6:07-cv-224 PK/DJS |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Motion for Summary Judgment (Including Qualified Immunity for the Individual Defendants) filed September 8, 2008. Doc. 57. Upon consideration thereof, the court finds that:

(1) <u>Background.</u> This case arises out of an allegation by a private citizen, Syra Roman, that two APD undercover narcotics detectives (Plaintiffs Vicente Alvarado and Steve Flores) sexually assaulted her on May 3, 2004. The Albuquerque Police Department ("APD") and the FBI investigated Ms. Roman's allegations, and during the course of their investigation, questioned Alvarado,

Torres and Plaintiff Thomas Gutierrez. Gutierrez was not accused of a crime, but rather was questioned merely as a witness.

Briefly, Plaintiffs' Second Amended Complaint alleges that Defendants violated Plaintiffs' constitutional rights by interrogating them and improperly disclosing to the media that Plaintiffs Alvarado and Flores were the subjects of a criminal investigation. Plaintiffs' Second Amended Complaint contains five counts. Count I alleges invasion of privacy under state law. Count II alleges intentional infliction of emotional distress under state law. Count III alleges defamation under state law. Count IV alleges that the Defendants' detained Plaintiffs without probable cause, in violation of the Fourth Amendment and New Mexico's criminal proscription against false imprisonment. Count V alleges that Defendants violated Plaintiff Gutierrez's right to counsel under the Fifth Amendment by denying his requests for counsel while he was detained. Doc. 28.

The case has a long procedural history. Plaintiffs initially filed suit in New Mexico state court, alleging various claims against the City of Albuquerque ("City") and local television station KOB-TV. Defendants removed the action to federal district court. Alvarado v. KOB-TV, L.L.C., 1:05-cv-00750-WJ-LAM, Notice of Removal, Doc. 1 (D.N.M. July 8, 2005). The federal district court dismissed Plaintiffs' claims against KOB-TV, and that dismissal was affirmed in a discretionary appeal to the Tenth Circuit. Alvarado v. KOB-TV, L.L.C., 1:05-cv-00750-WJ-LAM, Memorandum Opinion & Order, Doc. 14 (D.N.M. Nov. 14,

2005), aff'd, Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210 (10th Cir. 2007). The district court also granted summary judgment in favor of the City on the federal claim contained in the complaint, a § 1983 action claiming that the City violated the Plaintiffs' constitutional and statutory right to privacy by leaking confidential information about the incident. Alvarado v. KOB-TV, L.L.C., 1:05-cv-00750-WJ-LAM, Memorandum Opinion & Order, Doc. 77 at 3-4 (D.N.M. Dec. 11, 2006). Plaintiffs conceded that their state-law claims for invasion of privacy and intentional infliction of emotional distress were barred by the lack of a waiver of sovereign immunity, so the district court granted summary judgment to the City on these claims as well. Id. at 3. Finally, the district court declined to exercise supplemental jurisdiction over the remaining state-law defamation and false imprisonment claims, remanding them to state court. Id. at 4.

Plaintiffs then filed their Second Amended Complaint, adding three APD officers (Carla Gandara, Ed Sauer and Lance Fails) as named Defendants. The action was once again removed to federal court. Doc. 1 & 2. Plaintiffs have abandoned their claims for invasion of privacy and intentional infliction of emotional distress (Counts I and II), Doc. 59 at 3, so the court will grant summary judgment in favor of the Defendants on these counts. Likewise, Plaintiffs have made it clear that Plaintiffs Yvette Alavarado and Priscilla Flores only assert loss of consortium claims in connection with the state-law defamation claim (Count III), so summary judgment is proper in favor of Defendants against Plaintiffs

Yvette Alavarado and Priscilla Flores on all counts of the Second Amended Complaint except Count III. That leaves three remaining counts: one for state-law defamation; and two involving federal civil rights claims, although one of the federal civil rights claims appears to be a hybrid based upon federal and state law theories.

(2) <u>Summary Judgment Standard.</u>  Summary judgment is appropriate under Fed. R. Civ. P. 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In applying this standard, the court reviews the evidence in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). At the same time, Plaintiffs must go beyond the allegations in the complaint and come forward with significantly probative evidence that would support a verdict in their favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

Particularly relevant in this case, a party seeking summary judgment must inform the court of the basis for its motion and identify those portions of the record that demonstrate the lack of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A party seeking summary judgment is not required to negate his opponent's claim; he may challenge the non-movant's ability to prove his claim based upon the record, and at that point, the non-movant must go beyond the pleadings and demonstrate a genuine issue for trial. <u>Id.</u> at

322-24. As with any motion, a non-movant who does not respond to a movant's grounds for summary judgment does so at his peril and cannot complain when the district court issues an unfavorable ruling. See United States v. Nacchio, 555 F.3d 1234, 1246-47 (10th Cir. 2009) (en banc).

(3) Qualified Immunity. Governmental officials performing discretionary functions are entitled to qualified immunity when their conduct does not violate clearly established rights of which a reasonable person would have known. Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The Supreme Court has emphasized that qualified immunity should be decided early in the proceedings because it is immunity from suit (rather than a defense to liability) that is effectively lost if Defendants are required to go to trial. Id. Qualified immunity is a legal inquiry, but it may be applied to government officials' mistakes of law, mistakes of fact, or mistakes involving mixed questions of law and fact. Id. Given a qualified immunity defense raised on summary judgment, Plaintiff must demonstrate how the facts (taken in the light most favorable to the Plaintiff) make out a constitutional violation, and if so, whether the right is clearly established given these specific circumstances. Id. at 815-16; Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc). The court may decide these issues in any order. Pearson, 129 S. Ct. at 818.

In this circuit, qualified immunity issues are almost always questions of law, decided by a court prior to trial. Keylon v. City of Albuquerque, 535 F.3d

1210, 1217 (10th Cir. 2008). Because the evidence even in the light most favorable to the Plaintiffs cannot support a constitutional violation on Count IV and V, the court will grant summary judgment in favor of Defendants on those claims. The court declines to exercise supplemental jurisdiction over the remaining state law claim for defamation and any remaining state law claim for false imprisonment and will remand the action to state court for consideration of those claims.

(4) Count IV. Count IV is grounded in the Fourth Amendment and a New Mexico criminal statute punishing false imprisonment as a fourth degree felony, N.M. Stat. § 30-4-3. To the extent that the Plaintiffs are basing a § 1983 claim on false imprisonment,[1] the essence of false imprisonment is detention without legal process. Wallace v. Kato, 549 U.S. 384, 389-90 (2007). Just as probable cause vitiates the unreasonable seizure claim, so too the false imprisonment claim. See Atkins v. Lanning, 556 F.2d 485, 487 (10th Cir. 1977).

The Fourth Amendment's proscription on "unreasonable searches and seizures" generally requires that police have probable cause before making an arrest. Herring v. United States, 129 S. Ct. 695, 698 (2009). Whether a

---

[1] The existence of probable cause would seem to end a state law false imprisonment claim. See Pierson v. Ray, 386 U.S. 547, 555 (1967); Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1207-08 (10th Cir. 2006) (an officer acting in good faith and with probable cause to arrest is a defense to a false arrest or false imprisonment claim).

warrantless arrest is supported by probable cause is an objective inquiry; the issue is whether law enforcement had a reasonable belief that the suspect had committed a crime. Maryland v. Pringle, 540 U.S. 366, 371 (2003); Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979).

Here, the uncontroverted facts establish that Ms. Roman provided a description of her alleged assailants and the alleged sexual assault to law enforcement. Doc. 57 at 3-4, ¶¶ 2 (undisputed), 5. Her identification, along with those of her associates, led law enforcement to seek search warrants allowing APD officers to seek bodily fluids, search City-owned vehicles, and the homes of Plaintiffs Flores and Alvarado. A state district judge issued those warrants. Doc. 57 at 5-6, ¶¶ 7, 8, & 9.

Plaintiffs were required by Defendant and APD Deputy Chief Sauer to report to FBI offices. Doc. 57 at 7 ¶ 11. Both Plaintiffs Alvarado and Flores signed advice of rights forms containing a Miranda warning and were interviewed. Doc. 57 at 7-8, ¶¶ 12-13. Plaintiff Gutierrez did not sign an advice of rights form. Doc. 57 at 8, ¶ 14.

For purposes of the motion, the court will assume that Plaintiffs Alvarado and Flores were seized and subjected to a custodial interrogation given the circumstances of the interrogations and whether a reasonable person would have felt free to leave. See Thompson v. Keohane, 516 U.S. 99, 112 (1995); Dunaway, 442 U.S. at 214-16. These Plaintiffs were transported from the police station to

the FBI; they each were given *Miranda* warnings, and they were targets of a criminal investigation. Doc. 59; id. Ex. 5 at 10; id. Ex. 6 at 71; id. Ex. 7 at 25-26; see Cerrone v. Brown, 246 F.3d 194, 201 (2d Cir. 2001). That said, however, no constitutional violation occurred as any seizure and custodial interrogation were accompanied by probable cause. The accusations and identifications by the alleged victim and her associates establish probable cause; moreover, a state district judge issued warrants on probable cause given similar information. Even if the probable cause determination were somehow wrong, nothing presented by Plaintiffs suggest that such a determination is outside the range of reasonableness (even given mistakes) permitted given the Fourth Amendment and qualified immunity. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (qualified immunity); Graham v. Connor, 490 U.S. 386, 396 (1989) (noting that an arrest of the wrong person can be objectively reasonable even if mistaken and that such an arrest would not violate the Fourth Amendment). Notwithstanding the lay view of an arrest and as the Court stated in Baker v. McCollan, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." 443 U.S. 137, 145 (1979).

    Plaintiffs contend that they either lack sufficient facts to dispute the subsidiary facts tending to establish probable cause or disagree with them. Doc. 59 at 3-4, ¶¶ 5, 7, 8, 9. That is not sufficient on summary judgment. See Fed. R.

Civ. P. 56(e)(2) (requiring specific facts be set out demonstrating a genuine issue for trial); Celotex, 477 U.S. at 324  After all, an important purpose of summary judgment is to remove from litigation factually unsupported claims or defenses. Celotex, 477 U.S. at 323-24, 327.  Other arguments made by the Plaintiffs are also unavailing.  Plaintiffs Alvarado and Flores contend that they were not informed of the nature of the investigation and the name of any complainant as required by N.M. Stat. Ann. § 29-14-4(C)(2).  Doc. 59 at 5, ¶¶ 12-13.  This state-law requirement in no way affects Fourth Amendment reasonableness in the context of probable cause.

The more difficult issue is whether the encounter between Plaintiff Gutierrez and Defendants was a consensual encounter or a seizure.[2]  Plaintiff Gutierrez testified on deposition that Defendant and APD Deputy Chief Sauer told him that his statement to the FBI would be voluntary and he did not have to give

---

[2] In deciding whether an encounter is consensual, the following non-exclusive factors are relevant:

> (1) the threatening presence of several officers; (2) the brandishing of a weapon by an officer; (3) physical touching by an officer; (4) aggressive language or tone of voice by an officer indicating compliance is compulsory; (5) prolonged retention of an individual's personal effects; (6) a request to accompany an officer to the police station; (7) interaction in a small, enclosed, or non-public place; and (8) absence of other members of the public.

United States v. Rogers, 556 F.3d 1130, 1137-38 (10th Cir. 2009).  The totality of the circumstances matters, focusing on whether a reasonable person would have felt free to terminate the encounter with law enforcement. Id. at 1138.

one. Doc. 62, Ex. N at 27. Additionally, it appears that Plaintiff Gutierrez was told that he was not being arrested, though he felt otherwise given that he was escorted to the FBI office and was questioned by two law enforcement officers. Doc. 57, Ex. I at 39-40. Plaintiff Gutierrez requested an attorney if he was to be charged with anything, and maintains that he was not given an attorney, was required to turn off his cell phone, was disarmed, and was unable to leave after two hours of questioning. Doc. 59, Ex. 4 at 40 & unnumbered page between 45 and 46; Doc. 62, Ex. N at 36. A transcript of the interrogation indicates that when Plaintiff Gutierrez inquired about leaving, the officer said he would check and then returned asking whether he could ask a few more questions and Plaintiff Gutierrez consented. Doc. 62, Ex. O at 109, 114-15.

Given these circumstances, no reasonable trier of fact, tethered to a standard of objective reasonableness, could conclude that this was anything but a consensual encounter. Plaintiff Gutierrez indicated that he felt compelled to answer questions because he was an APD employee and possibly would be placed on administrative leave if he did not answer questions. Doc. 59, Ex. 4 at 40. A law enforcement agency may require its employees to cooperate in a criminal investigation as part of their employment and place employees who do not on administrative leave. This by itself does not give rise to a seizure for purposes of the Fourth Amendment. Aguilera v. Baca, 510 F.3d 1161, 1168-71 (9th Cir. 2007); Driebel v. City of Milwaukee, 298 F.3d 622, 639 (7th Cir. 2002). That

said,

> while a law enforcement agency can order its employees to cooperate in a criminal investigation as a condition of their continued employment subject to the Constitution, it may not seize its employees and detain them against their will without probable cause. Nor may compelled statements be obtained in violation of their constitutional rights against self-incrimination without the protection afforded by Supreme Court decisions [holding that public employees cannot be forced to choose between waiving Fifth Amendment rights and adverse employment action] . . . .

Aguilera, 510 F.3d at 1169 (footnote and internal citations omitted); see also Garrity v. New Jersey, 385 U.S. 493, 497-98 (1967) (statements by public employees were involuntary as they were a product of a choice between forfeiting jobs or incriminating themselves). However, here Plaintiff was told at the outset that the interview was voluntary and that he could leave. Moreover, he was not given Miranda warnings, the significance of which would be apparent to a veteran law enforcement officer. The fact that he was questioned without his cell phone or weapon does not transform the encounter into a seizure, nor does the prospect that he might be placed on administrative leave. No evidence suggests that his interrogators brandished weapons, or spoke to him in a menacing or threatening manner. See Aguilera, 510 F.3d at 1169; Driebel, 298 F.3d at 642. In sum, the totality of the circumstances suggests a consensual encounter for which individualized suspicion is unnecessary.[3]  See Florida v. Bostick, 501 U.S. 429,

---

[3] In the alternative, were the encounter deemed a seizure, the individual (continued...)

434 (1991).

(5) <u>Count V.</u>  Defendants seek summary judgment on Count V of the Second Amended Complaint on the grounds that Plaintiff Gutierrez has no Sixth Amendment claim for violation of the right to counsel based upon his requests for counsel.  Both parties rely upon <u>Cinelli v. City of Revere</u>, which suggests that in order to recover for a Sixth Amendment violation, a plaintiff must establish a realistic possibility or injury or benefit from the state resulting from the denial of counsel, and leaves open the possibility that severe emotional injury may be sufficient.   820 F.2d 474, 477-78 (1st Cir. 1987).  <u>Cinelli</u> is distinguishable in that the plaintiff had been arraigned prior to the plaintiff completing an invalid waiver and being questioned over his request for counsel.  <u>Id.</u> at 475-76.

The Supreme Court has held repeatedly that the Sixth Amendment right to

---

[3](...continued)
Defendants are entitled to qualified immunity because a reasonable officer could certainly view the encounter as consensual for the reasons stated above.  <u>See</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").  Though the officers' intent is not relevant, what occurred here was a product of the officers' stated objective of not charging Plaintiff Gutierrez concerning this or any other matter, but rather to question him as a possible witness.  Doc. 57, Ex. I at 38-40.  The fact that the officers (1) did not tell Plaintiff Gutierrez that he was free to leave once questioning was underway or (2) later checked on whether he was free to leave, would not turn an otherwise consensual encounter into a seizure, particularly since Plaintiff Gutierrez had been informed at the outset that the interview was voluntary.  <u>See</u> <u>United States v. Drayton</u>, 536 U.S. 194, 205 (2002) (consent does not depend upon individuals being informed that they may refuse to answer questions); <u>United States v. Thompson</u>, 546 F.3d 1223, 1228 (10th Cir. 2008).

counsel does not attach until judicial proceedings are commenced against an individual, whether by formal charge, preliminary hearing, indictment, information or arraignment. Rothgery v. Gillespie County, 128 S. Ct. 2578, 2583 (2008). The right to counsel under the Sixth Amendment did not attach in this case because judicial proceedings were not commenced against Plaintiff Gutierrez.

While the motion and response before the court addresses the Sixth Amendment, the Second Amended Complaint actually grounds Count V in a Fifth Amendment right to counsel theory, as does the pretrial order. Doc. 28 at 11; Doc. 65 at 3-4. Having held that Plaintiff Gutierrez was not subjected to a custodial interrogation, however, any claim to counsel based upon Miranda must fail. See Stansbury v. California, 511 U.S. 318, 323 (1994); Edwards v. Arizona, 451 U.S. 477, 482 (1981); Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Moreover, nothing suggests that Plaintiff Gutierrez was compelled to waive any Fifth Amendment privilege or immunity in connection with the interrogation. See Garrity, 385 U.S. at 496-98; see also Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation, 392 U.S. 280, 284-85 (1968); In re Grand Jury Subpoenas v. United States, 40 F.3d 1096, 1101-03 (10th Cir. 1994). Finally, any Fifth Amendment claim on this basis cannot succeed because Plaintiff Gutierrez was not charged with a crime and his statements have not been used against him. Chavez v. Martinez, 538 U.S. 760, 768-70 (2003) (plurality op.); Aguilera, 510 F.3d at

1173-74.

(6) <u>Count III - Defamation.</u>  The court will remand this state law claim to state court, as the federal claims have been resolved.  28 U.S.C. § 1367(c)(3); <u>see</u> <u>Lapides v. Bd. of Regents</u>, 535 U.S. 613, 618 (2002) (noting that in the absence of any viable federal claims, a remand of the supplemental state-law claims is likely).

(7) <u>Municipal Liability Claims.</u>  Plaintiffs have not established a constitutional violation given the reasons discussed above, let alone an official custom and policy.  Of course, the City cannot be held liable in the absence of a constitutional violation by one of its officers.  <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Estate of Larsen ex rel. Sturdivan v. Murr</u>, 511 F.3d 1255, 1264 (10th Cir. 2008).  Thus, the City must be dismissed insofar as any recovery based on constitutional violations.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that Defendants' Motion for Summary Judgment (Including Qualified Immunity for the Individual Defendants) filed September 8, 2008 (Doc. 57) is granted in part and denied in part as follows:

(1) Defendants are granted summary judgment on Counts I (state law invasion of privacy), II (state law intentional infliction of emotional distress), IV (Fourth Amendment unreasonable search and seizure), and V (violation of Fifth or Sixth Amendment rights to counsel) of the Second Amended Complaint and

those claims will be dismissed with prejudice.

(2) Count III (state law defamation) shall be remanded to state court, as shall Count IV (state law false-imprisonment claim).

DATED this 20th day of April 2009, at Santa Fe, New Mexico.

                                                      /s/ Paul Kelly, Jr._____
                                                      United States Circuit Judge
                                                      Sitting by Designation

Counsel:

Robert Jason Bowles and BJ Crow, Bowles & Crow, Albuquerque, New Mexico, and Colin Hunter, Hunter Law Firm, Albuquerque, New Mexico, for Plaintiffs.

Patrick D. Allen, Yenson, Lynn, Allen & Wosock, P.C., Albuquerque, New Mexico, for Defendants.